IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LORI M. FARRELL**,                                  Case Number 5:10 CV 811

      Plaintiff,                                  Judge Lesley Wells

      v.                                  REPORT AND RECOMMENDATION

**COMMISSIONER OF
    SOCIAL SECURITY**,

      Defendant.                                  Magistrate Judge James R. Knepp II

## Introduction

Plaintiff Lori Farrell appeals the administrative denial of disability insurance benefits (DIB). The district court has jurisdiction under 42 U.S.C. § 405(g). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons discussed below, the undersigned recommends the Commissioner's decision be affirmed.

## Factual Background

*Medical Evidence*

On August 2, 2005, Plaintiff suffered a serious ankle injury while on vacation. (Tr. 291, 350-53).[1] Plaintiff twisted her ankle when she fell in the ocean and sustained an open bimalleolar (involving both sides) ankle fracture. (Tr. 291, 352-53). Plaintiff had surgery the same day and her ankle was immobilized for seven weeks. (Tr. 291, 350-51). At that time, she was given a boot and allowed to begin weight bearing activity. (Tr. 287, 291).

---

[1] Because Plaintiff challenges only the ALJ's conclusions regarding her physical impairments, the Court will focus primarily on those records. Plaintiff does not challenge the ALJ's conclusion regarding limitations as a result of her adjustment disorder.

On September 29, 2005, Dr. Ian Alexander, Plaintiff's treating orthopedic surgeon, recommended physical therapy and noted Plaintiff should remain off work until October 24. (Tr. 324).  Plaintiff began physical therapy in October 2005 and continued through early 2006. (Tr. 266-92). Physical therapists noted she tolerated the therapy well and that her range of motion improved. (Tr. 282-86). During this same time period, Plaintiff continued to see Dr. Alexander.  (Tr. 325, 319). Each time Dr. Alexander noted Plaintiff should remain off work for a period of time. (*Id.*).

In November 2005, Dr. Robert Greiger performed a consultative examination of Plaintiff. (Tr. 344-46). Plaintiff reported physical therapy had markedly improved her pain and swelling and she still had stiffness in her ankle but it was improving. (Tr. 344). She described a "deep-seated achy pain when she weight bears." (*Id.*). Dr. Greiger found Plaintiff had 30 to 40 degrees of ankle flexion, was able to stand with difficulty, and apply partial weight bearing. (Tr. 345). Dr. Greiger concluded Plaintiff had traumatic right ankle pain and lower right extremity RSD (reflex sympathetic dystrophy) "which appears to be resolving somewhat." (*Id.*).

On December 16, 2005, Dr. Alexander again stated Plaintiff should remain off work for six weeks. (Tr. 318). He also noted her pain was decreasing, swelling was better, and RSD was getting gradually better. (*Id.*). On January 6, 2006, Dr. Alexander noted similar improvements and recommended Plaintiff remain off work until January 30. (Tr. 317).

A January 2006 physical therapy note indicates Plaintiff tolerated the treatment well, and her "[f]unction looks great" although "subjectively" Plaintiff didn't think she was improving enough. (Tr. 277). A physical therapy note from later in January indicates Plaintiff was not ready to return to work yet. (Tr. 273). Again in February 2006, physical therapy notes indicate Plaintiff "[o]bjectively has good function, but subjectively reports pain." (Tr. 269).

In late January 2006, Plaintiff saw Dr. Joseph Iemma who noted Plaintiff's "[r]ight lower extremity has very significant lateral and medial scars which are well-healed" and a "significant decreased range of motion." (Tr. 341-43).

From January to March 2006, Dr. Alexander found Plaintiff's condition was improving, but each time advised Plaintiff to remain off work for a period of time. (Tr. 312-16). His final note states Plaintiff can return to work March 27, 2006. (Tr. 312).

On May 19, 2006, Dr. Kamal Patel consultatively examined Plaintiff at the request of the state agency. (Tr. 354-61). Plaintiff reported physical therapy had improved her range of motion, but she continued to have pain. (Tr. 354). Dr. Patel noted Plaintiff returned to work one month prior for approximately six hour shifts twice a week. (*Id.*). Dr. Patel also found Baker's cysts in both of Plaintiff's knees. (Tr. 354-55). Plaintiff reported her pain is exacerbated by prolonged standing and stairs. (Tr. 355). Dr. Patel found normal range of motion in Plaintiff's ankles. (Tr. 361). Dr. Patel noted Plaintiff "denies any difficulty with sitting" and concluded she could lift 30 to 40 pounds, and "would not require restrictions on sitting". (Tr. 356-57).

On June 21, 2006, Dr. Edmund Gardner reviewed the record and stated Plaintiff could frequently lift 25 pounds, stand or walk for about six hours in an eight hour work day as long as she was allowed breaks, and sit for six hours in an eight hour workday. (Tr. 362-69).

In July 2006, Plaintiff went to the Cleveland Clinic Pain Management Department for evaluation of her ankle pain. (Tr. 261-64). Plaintiff reported standing and walking aggravated her pain, and elevating her foot and contra baths helped relieve her pain. (Tr. 261). Plaintiff was prescribed pain medications. (Tr. 262).

Plaintiff returned to the Cleveland Clinic in October 2006. (Tr. 259-61). Plaintiff reported

3

no problems with her medications, but stated her symptoms persisted. (Tr. 259). Plaintiff's right foot was sensitive to the touch, and had decreased range of motion. The doctor noted Plaintiff likely had RSD, even though tests were unclear, and indicated he would consider a spinal cord stimulator trial. (*Id.*). Plaintiff requested, and received, a letter stating she can only work two days per week. (*Id.*).

In January 2007, Plaintiff returned to see Dr. Iemma who noted Plaintiff's gait was normal and motor strength was 5/5 bilaterally in both upper and lower extremities. (Tr. 338-40).

Dr. Naishaj Shah performed a consultative examination of Plaintiff in July 2007. (Tr. 329-36). Plaintiff reported having tried steroids, anti-inflammatories, and nerve blocks without much relief from the "chronic burning and numbness" in her right ankle. (Tr. 329). Her symptoms worsened if she was on her feet for a long time. (*Id.*). Plaintiff was still working two days a week as a waitress at this time. (*Id.*). Plaintiff had "[n]o issues with walking on flat surfaces" and "no issues with lifting or carry[ing] objects." (Tr. 330). On examination, Dr. Shaw found Plaintiff had a slight limp favoring the right side and marked reduction in right ankle range of motion. (Tr. 331). Otherwise her physical examination "was fairly unremarkable." (*Id.*).

In January 2008, Plaintiff returned to see Dr. Iemma. (Tr. 183-85). Dr. Iemma noted: "The ankle is giving her trouble, but she still manages to work." (Tr. 183). On examination, Dr. Iemma found Plaintiff's right ankle had a large scar and the skin was "slightly shiny" but also noted "no loss of function" in the extremities. (Tr. 184).  Dr. Iemma's plan of care stated:

1. Full fasting blood work.
2. Electrocardiogram.
3. 6-month follow-up.
4. Please quit smoking.

(Tr. 185).

On February 22, 2008, Plaintiff returned to Dr. Iemma's office complaining of a cough. (Tr.

178-81).   The practitioner who saw Plaintiff noted her history of right leg RSD, but did not document any current complaints related to her leg or ankle. (Tr. 178).[2]  The practitioner stated Plaintiff could return to work the following day, February 23. (Tr. 181).

On May 11, 2008, Plaintiff was admitted to the hospital with diverticulitis. (Tr. 151). Plaintiff underwent surgery to correct the problem, a colostomy appliance was placed, and she underwent a later surgery to release a small bowel obstruction. (Tr. 151, 153, 155). In August 2008, Plaintiff had surgery to reverse the colostomy. (Tr. 144). Post-surgery, she was readmitted to the hospital with C. difficile colitis. (Tr. 137-38). She was discharged five days later in stable condition. (Tr. 138).

*Testimony*

Plaintiff testified she thought she could stand for no more than an hour, depending on the day, and sit or walk for fifteen minutes to a half hour. (Tr. 386). Plaintiff stated that elevating her leg helps with the swelling and pain. (*Id*.). Later, Plaintiff stated she could not walk fifteen minutes to a half hour without stopping. (Tr. 393).

Plaintiff testified she worked as a waitress at Red Lobster until May 2008. (Tr. 388). She worked two nights per week after her ankle injury, down from five nights pre-injury. (Tr. 386-88). She could not work two consecutive nights. (Tr. 387). When working part time after her injury, Plaintiff received help from coworkers. (Tr. 399-400).

Plaintiff stopped working because of her diverticulitis and did not return due to ongoing stomach pain. (Tr. 388-89). Plaintiff testified she had multiple surgeries related to her diverticulitis,

---

[2] The practitioner's signature from this visit is illegible. It does not appear to match any of the physicians listed on top of the letterhead. (*See* Tr. 181).

and was scheduled to have a future surgery for a hernia. (Tr. 383). Before the hernia, Plaintiff said she could lift five pounds occasionally, but was told not to lift anything heavier than a gallon of milk due to her hernia. (Tr. 385).

Plaintiff testified that on an average day, she gets up and takes her son to school, although sometimes she has neighbors who help. (Tr. 390). Plaintiff then takes her medications and does some household chores including making beds, sorting clothes, sweeping the kitchen, and doing dishes. (Tr. 390-91). Plaintiff later stated she spends an hour or less per day on household chores. (Tr. 395).

Plaintiff described the pain in her ankle as "burning", "tingling", and "shaking". (Tr. 392-93).  She stated elevating her leg helps, and she elevates it four to six times a day for ten minutes. (Tr. 393-95). Plaintiff testified her ankle has been getting progressively worse. (Tr. 394). Plaintiff takes Neurontin, Tramadol, and Vicodin for pain. (Tr. 395-96).  Plaintiff also said she lies down several times during the day because she has no energy. (Tr. 397). She had not returned the Cleveland Clinic because she did not have the money to do the stimulator. (Tr. 400).

Plaintiff also testified the Baker's cysts on her knees get more painful when she stands, walks, or bears weight. (Tr. 398). Plaintiff does not take any medication for the cysts, but a doctor told her when they become too painful, she will need to have them drained. (Tr. 399).

Ted Macy, a Vocational Expert (VE) testified Plaintiff's past work as a waitress was a medium exertion level job. (Tr. 403). The ALJ asked the VE a hypothetical question consistent with his residual functional capacity (RFC) determination, and the VE testified there are sedentary jobs such a person could perform. (Tr. 404). The VE also testified that if an individual were off task for more than eight to ten minutes per hour or missed work more than two days per month, the jobs would be eliminated. (Tr. 407-08). The VE further testified he did not know precisely what effect

a requirement that a individual elevate her leg would have on the availability of jobs. (Tr. 409).

## Procedural Background

Plaintiff applied for DIB on February 14, 2006, alleging a disability onset date of August 2, 2005 based on RSD and open fracture of her right ankle bimalloelar.  (Tr. 76-77, 110).  The state agency denied Plaintiff's application initially and on reconsideration. (Tr. 64, 59)  Plaintiff requested a hearing.  (Tr. 57).  On February 4, 2009, an ALJ conducted a hearing in Cleveland, Ohio.  (Tr. 375-412).  Plaintiff appeared with counsel and testified.  (*Id.*).

On May 13, 2009, the ALJ issued a written decision denying Plaintiff's claim.  (Tr. 15-25). The ALJ found that Plaintiff was not entitled to benefits because she could perform a limited range of sedentary work. (Tr. 19). The Appeals Council denied review on February 26, 2010, (Tr. 3-6), rendering the ALJ's decision the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981. On April 19, 2010, Plaintiff filed the instant case. (Doc. 1).

## Standard of Review

Reviewing the denial of DIB, this Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citing 42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)). The court "may not try the case de novo, nor resolve

conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003). However, procedural errors can be a basis for overturning the decision of the Commissioner, even if that decision is supported by substantial evidence. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## Standard for Disability

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. § 423(a) & (d). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).  The Commissioner uses a five-step sequential evaluation process, found at 20 C.F.R. § 404.1520, to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One

through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers a claimant's residual functional capacity, age, education, and past work experience to determine if a claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## Discussion

Plaintiff presents two main arguments: 1) the ALJ's RFC determination did not include all of Plaintiff's limitations; and 2) the ALJ erred in finding Plaintiff's complaints not fully credible. Defendant contends the ALJ's decision is supported by substantial evidence on both grounds.

### *RFC Determination*

Plaintiff argues the ALJ erred in his RFC determination by relying too heavily on "return-to-work" notes and failing to address Plaintiff's testimony that she needed to elevate her foot. Plaintiff also contends the ALJ erred in finding Plaintiff capable of full time work.

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.* § 404.1529. An ALJ must also consider and weigh medical opinions. *Id.* § 404.1527.

The ALJ found Plaintiff had severe impairments of open bimalleolar right ankle fracture, RSD of the right lower extremity, Baker's cysts on both knees, and an adjustment disorder. (Tr. 17). The ALJ explained that although Plaintiff's diverticulitis was not a severe impairment for twelve

continuous months, he "accomodate[d] [Plaintiff's] complaints of ongoing incisional pain by limiting her to the range of sedentary work" explained later in his decision. (Tr. 18). After consideration of the record, the ALJ found Plaintiff had the RFC to:

> perform sedentary work, meaning she can occasionally lift and carry 10 pounds and stand and walk occasionally; and she can sit for six hours in an eight-hour workday . . . except she cannot climb ladders, ropes, or scaffolds or walk on slippery or uneven surfaces. She can perform simple routine tasks.

(Tr. 19).

Plaintiff first objects to the ALJ's reliance on return-to-work notes. Plaintiff points out that Dr. Alexander consistently assigned a future date at which Plaintiff could return to work, only to extend that date at her next appointment. The ALJ relied on Dr. Alexander's last note of record, which stated Plaintiff could return to work March 27, 2006. (Tr. 21, 312).  Plaintiff points to no subsequent notes from Dr. Alexander restricting her work activity and Plaintiff herself reported she did return to work – albeit on a reduced schedule – around this time. (Tr. 355 (May 2006 consultative examination note indicates Plaintiff "works twice a week for approximately six hours per shift" and has "been back to work for approximately one month")). Doctors also noted in 2006 and 2007 that Plaintiff was working two days a week, (Tr. 259, 329), and Plaintiff testified she worked until May 2008 (Tr. 388).  The ALJ therefore did not err in relying on Dr. Alexander's final return-to-work note as some evidence of Plaintiff's functioning at this time. As the ALJ noted, Plaintiff's waitressing job was more physically demanding than the sedentary RFC assigned by the ALJ.

Plaintiff also objects to the ALJ's statement: "On March 23, 2008[3] it was noted the

---

[3] This is a typographical error; the note states: *February* 23, 2008. (Tr. 21).

claimant could return to work activity without restrictions." (Tr. 21; *see also* Tr. 23). Plaintiff argues

that "no physician . . . opined Plaintiff could return to work" on this date,[4] and "it is clear that

whoever released Plaintiff to return to work was doing so only from the standpoint of her complaints

of a cough." (Doc. 15, at 9 (citing Tr. 178-81)). Although the medical record notes Plaintiff's history

of right leg RSD, Plaintiff did not report any complaints regarding her ankle or leg during this visit.

(*See* Tr. 178-80). Even if it were error for the ALJ to rely on this note to support his finding that

Plaintiff's ankle problems did not prevent her from working, it does not require remand because the

ALJ's decision is otherwise supported by substantial evidence as discussed below.  The ALJ did not

rely exclusively on the return-to-work releases.

Plaintiff secondly argues the ALJ failed to address her testimony that she needs to elevate

her foot four to six times per day. The ALJ explicitly noted Plaintiff's statements that elevating her

leg helped relieve her pain. (Tr. 18, 20). Plaintiff reported to physicians that elevating her leg helped

relieve her symptoms. (Tr. 261, 344, 352). However, as Defendant points out, no physician ever

advised Plaintiff of the need to elevate her leg, and, perhaps more importantly, no physician ever

stated that this was a condition of Plaintiff's ability to work. As discussed below, the ALJ had

substantial evidence to support his credibility determination, and therefore did not err in failing to

adopt Plaintiff's subjective claim that she needed to elevate her leg with the frequency described.

Plaintiff's third objection to the ALJ's RFC determination is that "[t]here is no evidence in

the record that Plaintiff is able to sustain full time employment." (Doc. 15, at 11). This argument is

based on the fact that Plaintiff returned to her job as a waitress on two non-consecutive days per

---

[4] As noted above, the practitioner's signature on the return-to-work slip is illegible. It does
not appear to match any of the physicians listed on top of the letterhead. (*See* Tr. 181).

week, whereas she worked five nights per week before the injury. Plaintiff is certainly correct that there is evidence to support the assertion that she could not return to her *job as a waitress* full time. However, as the ALJ explained, Plaintiff's job as a waitress was a medium exertion level job.  (Tr. 24). Finding that she could not return to this work, the ALJ limited Plaintiff to *sedentary* work. It requires no logical leap to find that although Plaintiff might not have been able to perform her previous, more physically demanding job, she is capable of other less physically demanding jobs.

Additionally, the ALJ's RFC determination, finding Plaintiff capable of sedentary work, is otherwise supported by substantial evidence. The ALJ thoroughly discussed the medical and other record evidence and explained the weight he gave to each. Specifically, the ALJ cited Dr. Iemma's physical examination of Plaintiff in January 2008 where Dr. Iemma noted that Plaintiff's "ankle is giving her trouble, but she still manages to work" and that she had "no loss of function in the extremities" and a normal gait. (Tr. 22, 183-84). Indeed, as early as November 2005, Plaintiff reported that her ankle symptoms were markedly improved as a result of physical therapy. (Tr. 344). The ALJ also noted consultative examiners in May 2006 and July 2007 did not suggest Plaintiff was unable to work. (Tr. 23, 354-61, 329-36). In fact, at the May 2006 consultative examination, Dr. Patel noted Plaintiff "denies any difficulty with sitting" and "would not require any restrictions on sitting", consistent with the ALJ's sedentary RFC. (Tr. 356-57). At the July 2007 consultative examination, Dr. Shaw noted Plaintiff's ongoing symptoms and reduced range of motion in her ankle. (Tr. 329-30). However, as the ALJ correctly pointed out, "the physician did not specify limitations involving the claimant's right ankle problem". (Tr. 23). The ALJ also reasonably considered Plaintiff's part time work as a waitress as evidence that she was capable of some work activity. Finally, no medical source of record opined Plaintiff was disabled, and no medical source

12

placed restrictions on Plaintiff's ability to work preventing work at the RFC level the ALJ found.

In fact, the ALJ correctly noted that he applied "significantly more limitations than . . . any medical

source of record", including accommodating ongoing incision or hernia pain related to her

diverticulitis. (Tr. 22). Given all of the above, the Court finds the ALJ's RFC determination

supported by "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Besaw*, 966 F.2d at 1030.[5]

*Credibility Analysis*

Plaintiff secondly contends the ALJ erred in finding her not fully credible because her daily

activities were more substantial than she alleged. Plaintiff contends the ALJ's decision to not believe

her testimony entirely is in contradiction to his statements elsewhere that he found her credible.

A claimant's subjective complaints can support a claim for disability, but there must also be

objective medical evidence in the record of an underlying medical condition. *Jones v. Comm'r of*

*Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). Further, "an ALJ is not required to accept a claimant's

subjective complaints and may properly consider the credibility of a claimant when making a

determination of disability." *Id.* at 476 (citations omitted).  Analysis of alleged disabling symptoms

turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004).

"Because of their subjective characteristics and the absence of any reliable techniques for

measurement, symptoms (especially pain) are difficult to prove, disprove, or quantify." SSR 82-58,

---

[5] Plaintiff also argues that the VE's testimony shows there are no jobs available if an employee is off task for eight to ten minutes per hour or misses more than two days of work per month. This is true, however, the ALJ is only required to include in his hypothetical those limitations he finds credible. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). As noted above and below, the ALJ's RFC determination and credibility analysis are supported by substantial evidence and as such, he was not required to include these restrictions in his hypothetical.

1982 WL 31378, *1. In evaluating credibility an ALJ is to consider the factors listed in 20 C.F.R. § 404.1529(c)(3) including Plaintiff's daily activities, pain, medications, and other treatments.

On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (citation omitted). Still, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *2. The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence . . . ." *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Plaintiff specifically argues the ALJ failed to analyze her allegations of pain and failed to provide an explanation for his finding that Plaintiff's "daily activities have, at least at times, been somewhat greater than she generally reported, and in excess of the assessed residual functional capacity in this case." (Tr. 22). The ALJ cited the relevant regulation and Social Security Ruling and summarized Plaintiff's testimony about her pain and abilities. (Tr. 19-20). However, he concluded Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 21).

The ALJ acknowledged Plaintiff's testimony about Baker's cysts. (Tr. 21). Although this

is supported by a 2006 consultative examination (Tr. 354-55), the ALJ noted Plaintiff "has not received specific treatment for this problem" and a 2007 consultative examination indicated full range of motion in both knees and Plaintiff did not complain of knee pain at that time. (Tr. 329-36). Lack of treatment and consistency with the record as a whole are factors the ALJ may consider when assessing credibility. *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that a claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain."); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247-48 (6th Cir. 2007) ("Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect."); *see also* SSR 96-7p, 1996 WL 374186,*5 ("One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record."). Despite this, the ALJ concluded Plaintiff was somewhat "limited by pain in both knees because of bilateral Baker's cysts." (Tr. 22).

With respect to Plaintiff's ankle problems, the ALJ explained Plaintiff had not had ongoing treatment for her ankle problems since 2006,[6] was returned to work activity by her physician on March 27, 2006, and later examinations showed normal gait and no loss of function. (Tr. 312, 338-40, 183-85). As explained above, it was reasonable for the ALJ to rely in part on the return-to-work note, particularly when Plaintiff did in fact return to work part time. The ALJ acknowledged Plaintiff's testimony that "[s]he contened to have pain and limitation of motion in the right ankle."

---

[6] Plaintiff did report to Dr. Iemma in January 2008 that her ankle still bothered her, but at that visit Dr. Iemma noted "no loss of function" in Plaintiff's extremities and did not suggest any follow-up care regarding Plaintiff's leg or ankle. (Tr. 183-85).

(Tr. 22). He found her allegations that she is unable to work her job as a waitress two consecutive days to be credible given her physical limitations. (*Id.*). The ALJ's findings that Plaintiff is credible in her testimony that she could not work as a waitress for two consecutive days and that Plaintiff's ability to work two non-consecutive days shows her abilities are greater than those to which she testified are not contradictory findings.  Plaintiff testified that she could stand for one hour at a time, walk or sit for fifteen to 30 minutes at a time, and that she was only able to do household chores for an hour or less per day (Tr. 386, 393, 395), but also testified – and the record shows – that she worked two days per week as a waitress until May 2008 (Tr. 387-88). In fact, the ALJ noted that her yearly earnings after she returned to work did not decrease substantially from her pre-injury earnings. (Tr. 22). This provides support for the ALJ's conclusion that Plaintiff's daily activities were less limited than she claimed, and the ALJ properly considered this contradiction in finding Plaintiff's allegations of complete disability not fully credible. *See Rogers*, 486 F.3d at 247-48.

This is not a case where the ALJ simply stated he found Plaintiff's allegations not credible. Rather, he examined Plaintiff's statements and compared them with the record as a whole, finding some of them credible, and some of them not.  Although Plaintiff is correct that there is certainly evidence to support her position, this Court's role is not to re-weigh the evidence. *See Gaffney*, 825 F.2d at 100. The ALJ's credibility determination, read as a whole, explains he found Plaintiff's statements not fully credible to the extent they were inconsistent with the record and to the extent they contradicted her actual activities.  The decision "contain[s] specific reasons for the finding on credibility, supported by the evidence in the case record". SSR 96-7p, 1996 WL 374186, *4.

### Conclusion and Recommendation

Following review of the arguments presented, the record, and applicable law, this Court finds

the Commissioner's decision denying a period of disability and DIB not contrary to law and supported by substantial evidence.  The undersigned therefore recommends the Commissioner's decision be affirmed.

　　　　　s/James R. Knepp II　　　　　
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).